## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBIN ANN PERFINSKI,** | : | **Civil No.  1:20-CV-78** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

In Robin Perfinski's case, we most assuredly do not write upon a blank slate. Quite the contrary, Perfinski's disability application has been pending for 8 years, since 2013, and this is the second appeal of an adverse ALJ decision.

In 2019, this court remanded Perfinski's case to the Commissioner for further proceedings after finding "that the ALJ erred in a . . . significant fashion, by failing to adequately explain [the] decision to assign 'limited weight' to the medical opinions offered by three treating physicians." Perfinski v. Berryhill, No. 1:17-CV-1316, 2019 WL 1299182, at *1 (M.D. Pa. Mar. 21, 2019). On remand, the ALJ has, once again, largely discounted these treating source opinions, but a new and potentially material error has crept into the ALJ's medical opinion analysis. In the latest decision, in addition to generally discounting these treating source opinions,

the ALJ has given great weight to what the decision describes as an examining source opinion by a state agency doctor, Dr. Raymundo. (Tr. 475).

The ALJ's repeated characterization of Dr. Raymundo as an "examiner" of the plaintiff is wrong. Dr. Raymundo has never physically examined Perfinski. He has only reviewed certain of her medical records. The applicable Social Security medical opinion evaluation regulations draw a bright-line distinction between examining and non-examining sources and make it clear that non-examining source opinions are ordinarily entitled to significantly less weight. Since the latest ALJ decision contains what appears to be a patent and significant error—namely, an attribution of great weight to a medical opinion based upon an erroneous description of the medical source as an examiner—and then apparently relies upon this misstatement to afford greater weight to this single opinion than to the treating source consensus, a second remand is necessary in this case.

## II.   Statement of Facts and of the Case

This protracted Social Security disability case began in November of 2013 when Robin Perfinski filed an application for benefits pursuant to Title II of the Social Security Act, alleging an onset of disability beginning in November 8, 2013. (Tr. 460). Perfinski subsequently also sought benefits under Title XVI of the Act. (Id.)

With respect to these disability applications, it is entirely undisputed that Perfinski has long suffered from a cascading array of severe and non-severe physical and emotional impairments. In fact, the most recent ALJ decision in this case concluded in 2019 that she experienced the following severe impairments: degenerative disc disease throughout her spine, polyarthropathy, scoliosis, carpel tunnel syndrome, tendonitis, elbow epicondylitis, major depressive disorder, and marijuana use disorder. (Tr. 463). Beyond these severe impairments, Perfinski is plagued by numerous less severe medical conditions including, uterine leicmyoma, migraines, urinary tract infections, sinusitis, GERD, tobacco use disorder, bacterial vaginosis, hematuria, eczema, hemorrhoids, bronchitis, apnea, bradycardia, palpitations, cervicalgia, coccydynia, and at early stages in her disability process prior to 2017, depression. (Id.)

Despite this array of impairments, the ALJ who heard Perfinski's case initially denied her application for benefits on September 14, 2015. (Tr. 21-34). In this decision, the ALJ found that Perfinski could perform a range of light work despite her impairments and concluded that she did not meet the Act's standard for disability. (Tr. 29). In reaching this result, the ALJ assigned little weight to the opinions of three medical treating sources, who had stated that Perfinski's impairments imposed far greater limitations upon the plaintiff. (Tr. 29-31). Thus, the

ALJ's light work residual functional capacity assessment was unmoored to any medical opinion.

Perfinski appealed this adverse decision and on January 29, 2019, a magistrate judge of this court found "that the ALJ's RFC assessment [wa]s not supported by substantial evidence and therefore [] recommend[ed] that the ALJ's decision be vacated and that this case be remanded to the Commissioner to conduct a new administrative hearing." Perfinski v. Berryhill, No. 1:17-CV-1316, 2019 WL 1303196, at *9 (M.D. Pa. Jan. 28, 2019), report and recommendation adopted, No. 1:17-CV-1316, 2019 WL 1299182 (M.D. Pa. Mar. 21, 2019). On March 21, 2019, the district court adopted this recommendation, holding that:

> The magistrate judge opines that the ALJ erred by formulating a residual functional capacity ("RFC") for Perfinski which is untethered to, and less restrictive than, every medical opinion of record. We are inclined to agree but need not reach this issue, because we find that the ALJ erred in a more significant fashion, by failing to adequately explain his decision to assign "limited weight" to the medical opinions offered by three treating physicians. A treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Three treating physicians offered medical source opinions concluding that Perfinski's degenerative disc disease of the lumbar spine results in functional limitations. Dr. Tolan, a treating physiatrist, opined that Perfinski should "try to avoid . . . repetitive lifting from low levels, twisting[,] and bending," (Tr. at 203), and that a physically demanding position, such as her then-current job, would tend to aggravate the lumbar disc degeneration, (id. at 206). Dr. Fisher, a treating primary care physician, opined that Perfinski should be

"excused from bending and lifting." (Id. at 305; see id. at 311, 316). Dr. Werner, another treating primary care physician, opined, *inter alia*, that Perfinski "cannot lift more than 10 lbs without any pain" and "cannot twist, bend, squat[,] or climb due to pain." (Id. at 341, 371). The ALJ largely rejected each of these opinions, assigning them limited weight and declining to incorporate the treating physicians' proposed limitations into the RFC. The ALJ offered cursory rationale for his decision, employing boilerplate language that the opinions are not supported by and are inconsistent with the medical evidence of record. As support for this alleged inconsistency, he states only that the opinions cannot be reconciled with Dr. Werner's statement that Perfinski "has a normal gait and no focal motor/sensory deficits" and the lack of a positive finding for back or neck issues during two acute office visits concerning a cold and shortness of breath. (Id. at 32, 440-54). The ALJ fails to meaningfully engage with the treating source opinions; to identify material discrepancies between the treating source opinions and the underlying, longitudinal medical records; to identify contradictory medical evidence; or to otherwise justify assigning limited weight to every treating source opinion of record as required under the law. Without the requisite explanation, we cannot assess whether the ALJ's decision to reject all three treating source opinions was supported by substantial evidence.

Perfinski v. Berryhill, No. 1:17-CV-1316, 2019 WL 1299182, at *1 n. 1 (M.D. Pa. Mar. 21, 2019). This ruling made it abundantly clear that further scrutiny of the medical opinion evidence in Perfinski's case should be undertaken with scrupulous care and painstaking attention to detail.

Following this remand order, a second hearing was conducted in Perfinski's case and on November 14, 2019, the ALJ issued a decision that once again denied Perfinski's application for disability benefits. (Tr. 457-481). In this second decision, the ALJ adhered to her prior finding that Perfinski could perform light work, with some limitations. (Tr. 466). By the time of this second decision, Perfinski had been

seen and treated by additional physicians who had opined that she faced many emotional and physical limitations. Therefore, in this second decision, the ALJ was required to address five treating and examining source opinions which indicated that Perfinski suffered from significant limitations. With respect to each of these five treating and examining sources, the ALJ concluded that their medical opinions deserved little or partial weight. (Tr. 476-478).

Having largely discounted this body of medical evidence from treating and examining sources, the ALJ bolstered her light work RFC assessment by giving great weight to the opinion of a state agency physician, Dr. Raymundo, who stated that Perfinski could perform light work. (Tr. 475). The ALJ's decision further buttressed Dr. Raymundo's opinion by characterizing him as an examining medical source, describing the doctor as a "physical examiner." (Id.) This characterization was incorrect. Dr. Raymundo did not examine Perfinski. Instead, according to the administrative record, he simply reviewed a very limited body of medical records before he opined that Perfinski could perform light work. (Tr. 555-567). Nonetheless, even though it seems undisputed that Dr. Raymundo was not an examining medical source, the ALJ's decision persisted in misstating this important fact, describing the doctor as an "examiner" on several occasions. (Tr. 463, 475). With this new factual error and ambiguity having crept into the ALJ's analysis of the medical opinion evidence, the ALJ gave great weight and reliance to this non-

treating and non-examining source opinion when largely discounting the consensus of those physicians who had actually seen and treated Perfinski.

This appeal followed. (Doc. 1). On appeal, Perfinski argues, *inter alia*, that the ALJ erred in the evaluation of this medical opinion evidence, since the ALJ's assessment of this evidence appears to rest on a misstatement of fact regarding whether the one medical opinion given great weight overall came from a physician who had actually examined the plaintiff. For the reasons set forth below, we agree that this was a material misstatement which undermines confidence in the outcome reached here and requires that this case be remanded for further consideration by the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc.

Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review. Further, when this evaluation reveals material internal inconsistencies in the ALJ's opinion, remand is also required. See Rodriguez v. Comm'r of Soc. Sec., 231 F. App'x 103, 106 n. 2 (3d Cir. 2007).

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able

to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r
of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R.
§§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).   In   making   this
assessment, the ALJ considers all of the claimant's medically determinable
impairments, including any non-severe impairments identified by the ALJ at step
two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that
determination entails an assessment of what work the claimant can do given the
physical limitations that the claimant experiences. Yet, when considering the role
and necessity of medical opinion evidence in making this determination, courts have
followed several different paths. Some courts emphasize the importance of medical
opinion support for an RFC determination and have suggested that "[r]arely can a
decision be made regarding a claimant's residual functional capacity without an
assessment from a physician regarding the functional abilities of the claimant."
Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)
(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa.
Mar. 4, 2013)). In other instances, it has been held that: "There is no legal
requirement that a physician have made the particular findings that an ALJ adopts
in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11
(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any

credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living to fashion an RFC, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F. Supp. 3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC

is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

Further, in conducting this assessment "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). An ALJ must also "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Therefore:

> Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. See Plummer, 186 F.3d at 429; Cotter, 642 F.2d at 705. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). See Riley v. Colvin, No. 3:13-CV-1223, 2014 WL 4796602, at *7 (M.D. Pa. Sept. 26, 2014).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C.   <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence</u>

The Commissioner's regulations which were in effect at the time that Perfinski commenced this longstanding case also set standards for the evaluation of medical evidence. There are several key components to these regulations. First, the regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Thus, under these regulations, only certain medical professionals were qualified to give medical opinions.

The regulations also prescribed a hierarchical approach to evaluating opinions, a legally-mandated hierarchy which in the first instance suggests that the greatest weight should be given to treating sources, and ordinarily affords the least weight to non-treating and non-examining medical sources.  Thus, in deciding how much weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore

their opinions are generally entitled to more weight. <u>See</u> 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources . . ."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); <u>see also</u> SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). Once again, this litany of factors favors the opinions of treating and examining sources over non-treating, non-examining medical professionals.

16

The fundamental distinction between the weight normally given treating and non-treating sources in this disability analysis runs deep in the law and is expressly incorporated into the regulations that applied to the medical opinion analysis conducted in Perfinski's case. Those regulations plainly state that: "Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527( c )(1). Thus, "[I]t is well established that the opinions of a doctor who has never examined a patient 'have less probative force as a general matter, than they would have had if the doctor had treated or examined him.' " Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (citing Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986), quoting Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir.1984) (internal quotations omitted)).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or

for the wrong reason.' " <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (quoting

<u>Plummer</u>, 186 F.3d at 429). Therefore, provided that the decision is accompanied by

an adequate, accurate, articulated rationale, it is the province and the duty of the ALJ

to choose which medical opinions and evidence deserve greater weight.

There is, however, a necessary corollary to this principle. If an ALJ's decision

to credit the opinion of a non-examining source over the opinions of examining and

treating physicians rests upon some factual or logical errors, then at a minimum, a

remand is necessary. <u>Brownawell v. Comm'r Of Soc. Sec.</u>, 554 F.3d 352, 358 (3d

Cir. 2008).

### D.    <u>A Remand is Appropriate in this Case.</u>

As we have noted, an ALJ's decision must be accompanied by "a clear and

satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704.

Furthermore, the ALJ must also "indicate in his decision which evidence he has

rejected and which he is relying on as the basis for his finding." <u>Schaudeck</u>, 181 F.3d

at 433. This cardinal principle applies with particular force to several types of

assessment made by ALJs. First, it is well settled that "[t]he ALJ must consider all

relevant evidence when determining an individual's residual functional capacity."

<u>Fargnoli v. Massanari</u>, 247 F.3d 34, 41 (3d Cir. 2001). Therefore, an ALJ must

"explain his reasons for discounting all of the pertinent evidence before him in

making his residual functional capacity determination." <u>Burnett v. Comm'r of Soc.</u>

Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Second, with respect to an ALJ's assessment of medical opinion evidence, it is clear that "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429). Instead, courts have long recognized that, "[I]t is well established that the opinions of a doctor who has never examined a patient 'have less probative force as a general matter, than they would have had if the doctor had treated or examined him.' " Morales, 225 F.3d at 320. Further, when an ALJ's decision to credit the opinion of a non-examining source over the opinions of examining and treating physicians rests upon some factual or logical errors, then at a minimum a remand is necessary. Brownawell, 554 F.3d at 358.

Guided by these legal tenets, we find in this case that the ALJ's latest decision must be reversed since the ALJ appears to have largely discounted a growing consensus of treating and examining source medical opinions, and placed great weight on a single countervailing medical opinion based upon a fundamental factual error. Having largely discounted this body of medical evidence from various treating and examining sources, the ALJ concluded that Perfinski could perform light work by giving great weight to the opinion of a state agency physician, Dr. Raymundo, who the ALJ characterized as an examining medical source, describing the doctor as

a "physical examiner." (Tr. 475). This characterization was simply incorrect. Dr. Raymundo did not examine Perfinski. Instead, according to the administrative record, he simply reviewed a very limited body of medical records before he opined that Perfinski could perform light work. (Tr. 555-567). Nonetheless, the ALJ's decision persisted in misstating this important fact, describing the doctor as an "examiner" on several occasion. (Tr. 463, 475).

We cannot discern whether the ALJ misunderstood Dr, Raymundo's actual status as a non-examining source or simply misstated that status in the decision. In either event, the description is erroneous. Moreover, in this context, where Dr. Raymundo's opinion seems to be the only one given great weight overall by the ALJ, and that opinion is relied upon to reject the opinions of numerous physicians who actually saw and treated Perfinski, the mischaracterization of the doctor as an examining source is a material mistake.  It is an error and an ambiguity which runs afoul of the basic regulatory tenet that: "Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527( c )(1). It is a mistake which inadvertently converts an opinion which, as a matter of law deserves less weight, into a judgment entitled to greater significance. It is, therefore, a factual and logical error of the type which compels a remand where this misstatement appears to have contributed to a decision to credit a single non-examining source

over multiple examining and treating source medical opinions. <u>Brownawell</u>, 554 F.3d at 358.

Yet, while case law calls for a remand and further proceedings by the ALJ in this case, assessing this claim in light of this evidence, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this opinion should be deemed as expressing a view on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

## IV.   **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED for further consideration of the Plaintiff's application.

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

March  19, 2021